PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| USA PARKING SYSTEMS, LLC, | ) | |
| | ) | CASE NO. 4:20CV1967 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 11] |

Pending is Defendant Eastern Gateway Community College's ("EGCC") Motion for Preliminary Injunction (ECF No. 11). The Court held an electronic motion hearing on November 20, 2020. Michael Geoghegan, Martha Bushey, Lou Frangos, and Jeff Hamm testified as witnesses. The Court has considered the pre-hearing briefing, testimony of witnesses, exhibits,[1] arguments of counsel, and applicable law as well as the entire record in this matter. In balancing the four considerations applicable to the issuance of a preliminary injunction, the Court finds Plaintiff USA Parking Systems, LLC is not likely to succeed on the merits and holds that equitable relief is appropriate at this time for the reasons that follow.

---

[1] The 13 exhibits for the hearing were filed at ECF No. 28. The parties stipulated to the authenticity and admissibility of the exhibits for the purposes of the preliminary injunction hearing only.

(4:20CV1967)

## I.

EGCC is the lawful owner of the Property and Parking Garage located at 101 E. Federal St. in Youngstown, having purchased the Premises from Defendant STORE Master Funding VI, LLC ("STORE VI") pursuant to an April 2020 Amended and Restated Purchase and Sale Agreement (ECF No. 28-4). The Parking Garage spans five floors with approximately 1000 spaces. During its time as owner of the Parking Garage, STORE VI leased the Parking Garage to Defendant HEP-EGCC Ohio, LLC ("HEP").[2] HEP never owned the Property. *See* ECF No. 20-1 at PageID #: 260-62 and 2014 Purchase and Sale Agreement (ECF No. 20-2) at PageID #: 273, § 1.01).

In April 2014, Plaintiff, as "the Operator," and HEP entered into the Management Agreement (ECF No. 28-3) wherein Plaintiff would manage the Parking Garage for a period of 20 years. *See* Affidavit of Lou Frangos (ECF No. 23-1) at PageID #: 466, ¶ 15. Pursuant to section 9(c)(ii) of the Management Agreement, Plaintiff expressly agreed and acknowledged that it had no possessory or real estate interest in the Parking Garage ("Operator has no possessory or real estate interest in the Parking Garage." ECF No. 28-3 at PageID #: 884).

On August 4, 2020, EGCC, through counsel, sent a letter to Plaintiff notifying it that as of August 31, 2020, its services as operator of the Parking Garage would no longer be required. *See* ECF No. 28-7. On September 1, 2020, EGCC, through counsel, sent another letter to Plaintiff, this time advising Plaintiff that its employees, agents and assigns were not permitted to enter the Parking Garage. *See* ECF No. 1-7. Rather than vacate the Parking Garage and cease operations as requested by EGCC, Plaintiff filed this breach of contract action on September 1, 2020 against

---

[2] HEP was served with summons and complaint on October 14, 2020 and is in default. *See* Return of Service (ECF No. 24).

2

(4:20CV1967)

EGCC, as current owner of the Parking Garage; STORE VI, as prior owner of the Parking Garage; and HEP, as prior lessee of the Parking Garage.  In addition, Plaintiff sent a letter to EGCC dated September 15, 2020, demanding payment of more than $16,000 under the Management Agreement (ECF No. 28-3) and further threatened to deny entry to the Parking Garage in the event that EGCC did not comply with its payment demands.  *See* ECF No. 28-9. EGCC notified parking tenants that beginning September 1, 2020, all rental payments should be made to the law firm of Manchester, Newman & Bennett, to be held in escrow pending the outcome of this lawsuit.  However, Plaintiff then began to instruct parking tenants to not make payments into escrow, but rather, to make payments directly to Plaintiff.

## II.

As recently stated by the United States Court of Appeals for the Sixth Circuit:

> "A district court must balance four factors in determining whether to grant a preliminary injunction:  '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.' " *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)).  "These factors are not prerequisites, but are factors that are to be balanced against each other."  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  However, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' " *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).  "[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *Livingston County*, 796 F.3d at 642 (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)); *see also Tenke Corp.*, 511 F.3d at 546 n. 2 ("[I]n seeking a preliminary injunction, a federal plaintiff has the burden of establishing the likelihood of success on the merits.").

*Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020).  No single factor is determinative except that "a finding that there is simply no likelihood of success on the

3

(4:20CV1967)

merits is usually fatal." *Miles v. Michigan Dept. of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)).

### III.

According to EGCC, Plaintiff's claim suffers from at least two fatal flaws: (1) EGCC is not a party to the Management Agreement (ECF No. 28-3) and is not bound by its terms; and (2) Plaintiff is not being denied any property right or interest in the Parking Garage because it expressly disclaimed any and all property rights in the very Management Agreement (ECF No. 28-3) to which it pins its claims. EGCC asserts it is not a successor-in-title to HEP and is not bound by HEP's obligations because it purchased the Parking Garage from STORE VI.

Plaintiff does not dispute or deny that it expressly disclaimed in the Management Agreement (ECF No. 28-3) any possessory or real estate interest in the Parking Garage. Plaintiff is, in essence, asking the Court to ascribe no meaning to the plain language of the Management Agreement and ignore the disclaimer altogether, which it cannot do. *Darton Corp v. Uniroyal Chemical Co., Inc.*, 917 F. Supp. 1173, 1178 (N.D. Ohio 1996) (O'Malley, J.) ("It is true that a contract must be construed in its entirety, in a manner that does not leave any phrase meaningless or surplusage.") (internal citations omitted).

Plaintiff argues personal covenants and agreements relating to the use of land are binding upon a successor owner of real property with actual knowledge thereof. Plaintiff contends EGCC has no likelihood of success on the merits due to long-established equitable principles in Ohio that " '[a] personal covenant or agreement will be valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of

4

(4:20CV1967)

a valid agreement concerning it, which he cannot equitably refuse to perform.' " *Pittsburg, C. & St. L. Ry. Co. v. Bosworth*, 46 Ohio St. 81, 87 (1888) (citation omitted).  According to Plaintiff, EGCC is a purchaser of real property with notice of Plaintiff's personal covenant.  It relies on an Affidavit of Facts Relating to Title (ECF No. 28-5) that it filed with the Mahoning County Recorder in June 2020 prior to the closing of the transactions contemplated by the Amended and Restated Purchase and Sale Agreement (ECF No. 28-4).  *See* ECF No. 23-1 at PageID #: 466-67, ¶ 18.

EGCC argues the alleged "covenant" in the case at bar is simply a contract.  It was not created as part of a conveyance between Plaintiff and HEP because neither of them ever owned the Parking Garage.

Under Ohio law, personal covenants are not binding upon successor owners of property like EGCC and do not run with the land *unless* the person seeking to enforce the covenant first satisfies a three-part test to establish (1) intent for the restrictive covenant to run with the land; (2) the restrictive covenant touches and concerns the land; and (3) privity exists.  It is only after Plaintiff first satisfies this three-part test that the Court would then begin to analyze whether EGCC accepted the property with notice of the covenant.  *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta*, No. 01 CA 60, 2002 WL 924630, at *3, ¶¶ 17-23 (Ohio App. 7th Dist. March 18, 2002).  Plaintiff cannot satisfy any of the elements of the required three-part test.  Therefore, Plaintiff is not able to establish a restrictive covenant in the Parking Garage.

As to the first part of the test, the language of Sec. 9(c)(ii) in the Management Agreement (ECF No. 28-3) makes clear that the parties did not intend for the rights bestowed by the Management Agreement (ECF No. 28-3) to run with the land.  Whereas the Management

5

(4:20CV1967)

Agreement (ECF No. 28-3) may bind HEP and its successors-in-interest, it does not bind successors-in-title like EGCC.

Second, the Management Agreement (ECF No. 28-3) does not make the property more valuable or useful. Rather, it is presently a burden on the Property because it prevents EGCC from securing funding to effectuate necessary structural repairs to the Parking Garage, and is otherwise cost prohibitive.

Privity must be established as the third and final element in order for a personal covenant to bind successor owners of property. *Capital City Community Urban Redevelopment Corp. v. City of Columbus*, No. 08AP-769, 2009 WL 5062063, at * 4, ¶ 13 (Ohio App. 10th Dist. Dec. 24, 2009). There are two types of privity that must be established: horizontal and vertical. *BM-Clarence Cardwell, Inc. v. Cocca Dev. Ltd.*, No. 16 CA 3, 65 N.E.3d 829, 836, ¶ 41 (Ohio App. 5th Dist. Nov. 14, 2016). "Horizontal privity exists where the covenant was created as part of a conveyance of real property between creating parties." *Id.* (citation omitted). "Strict" vertical privity, meanwhile, is "the conveyance of an identical real property interest or the establishment of strict continuity of title among parties." *Id.* at ¶ 42. Here, neither horizontal nor vertical privity exist.

Finally, the remaining factors to be considered in connection with preliminary injunctive relief also favor an injunction. Landowners have an interest in exercising exclusive rights over their property. Absent injunctive relief, EGCC and the parking tenants will sustain immediate and irreparable injury. The only "harm" Plaintiff hints at is the harm to Plaintiff's purse in the event it is unable to continue to collect parking fees. However, this is an economic harm capable of being remedied with money damages if Plaintiff is correct in its legal position. Moreover, a Preliminary Injunction will serve the public interest.

(4:20CV1967)

## IV.

Defendant Eastern Gateway Community College's ("EGCC") Motion for Preliminary Injunction (ECF No. 11) is granted. Plaintiff USA Parking Systems, LLC is enjoined from:

(i) Maintaining an ongoing business presence at the Parking Garage owned by EGCC, and located at 101 E. Federal St., Youngstown, OH 44503 (the "Parking Garage");

(ii) Operating the Parking Garage;

(iii) Restricting or threatening to restrict EGCC and/or parking tenants' access to the Parking Garage;

(iv) Interfering with parking tenant relations by directing parking tenants to issue payments to Plaintiff rather than into escrow during the pendency of this lawsuit; and,

(v) Refusing to provide to EGCC records related to the operation of the Parking Garage, including rent rolls, swipe cards, contact information for all parkers, and access to the master control.

IT IS SO ORDERED.

| | |
|---|---|
| November 23, 2020 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |