PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| USA PARKING SYSTEMS, LLC, *et al.*, | ) | |
| | ) | CASE NO.  4:20CV1967 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| EASTERN GATEWAY COMMUNITY | ) | |
| COLLEGE, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 76, 87, 90, and 92] |

Pending is Defendant Eastern Gateway Community College's Motion to Dismiss

Plaintiffs' Amended Complaint (ECF No. 76).  For the reasons set forth in Section III below, the

motion is granted.

Also pending is Defendants Michael Perik and Higher Education Partners LLC's Motion

to Dismiss the First Amended Complaint (ECF No. 87).  For the reasons set forth in Section IV

below, the motion is denied.

In addition, pending is STORE Master Funding VI, LLC, STORE Capital Acquisitions,

LLC, and STORE Capital Corporation's Motion to Dismiss Plaintiffs' First Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 90).  For the reasons set forth in Section V below,

the motion is granted.

Finally, pending is Defendant The Huntington National Bank, as Trustee for

Bondholders, EGCC District General Receipts Improvement Bonds, Series 2020's Motion for

(4:20CV1967)

Judgment on the Pleadings (ECF No. 92).  For the reasons set forth in Section VI below, the

motion is granted.

## I.  Background

### A.

The First Amended Complaint (ECF No. 57) presents 22 Causes of Action brought by

Plaintiffs USA Parking Systems, Inc. ("USA Parking") and USA Plaza Parking Inc. ("USA

Plaza") concerning the Property and Parking Garage located at 101 E. Federal St. in

Youngstown, Ohio.  Defendants are Eastern Gateway Community College ("EGCC"); HEP-

EGCC Ohio, LLC (HEP-OH"); STORE Master Funding VI, LLC ("STORE VI"); STORE

Capital Acquisitions, LLC ("STORE Capital Acquisitions"); STORE Capital Corporation

(together "the STORE Defendants"); Michael Perik ("Perik"); Higher Education Partners LLC

("HEP"); and, The Huntington National Bank, as Trustee for Bondholders, EGCC District

General Receipts Improvement Bonds, Series 2020 (the "Trustee").

In 2014, STORE Capital Acquisitions, STORE VI, USA Plaza, and HEP-OH entered into

a sale-leaseback transaction concerning the Property.  The sale-leaseback transaction was

structured as follows:

On or about March 20, 2014, STORE Capital Acquisitions and HEP-OH entered into a

Purchase and Sale Agreement (ECF No. 90-2) concerning the Property.  HEP-OH did not own

the Property and did not transfer fee title to the Property to STORE Capital Acquisitions.  *See*

ECF No. 90-2 at PageID #: 2292, Section 1.01 ("The parties acknowledge and agree that (i) fee

title to the Property is currently held by USA Plaza[.]").  STORE Capital Acquisitions and HEP-

OH agreed that "[HEP-OH] is, or will be prior to Closing, under contract to acquire the Property

(4:20CV1967)

from [USA Plaza] pursuant to a purchase and sale agreement entered into, or to be entered into, between [USA Plaza] and [HEP-OH] (the "Owner PSA")[.]"  ECF No. 90-2 at PageID #: 2292, Section 1.01.  The acquisition contemplated in ECF No. 90-2 did not, however, involve HEP-OH taking record title to the Property.

In ECF No. 90-2, HEP-OH acknowledged and agreed that, in connection with the sale-leaseback, it would not take title to the Property.  Instead, HEP-OH would nominate STORE Capital Acquisitions as the party that would take title to, and become the owner of, the Property. *See* ECF No. 90-2 at PageID #: 2292, Section 1.01.  In this regard, HEP-OH acknowledged and agreed that:  "[HEP-OH] shall nominate [STORE Capital Acquisitions] to take title to the Property pursuant to the terms of the Owner PSA and the closing under the Owner PSA and the Closing [under ECF No. 90-2] shall be simultaneous."  ECF No. 90-2 at PageID #: 2292, Section 1.01.  Thus, the Property's ownership would be transferred from USA Plaza to STORE Capital Acquisitions.  HEP-OH would not become the Property's interim record title holder.

On or about April 16, 2014, and in connection with the sale-leaseback, STORE Capital Acquisitions and STORE VI entered into an Assignment and Assumption of Purchase and Sale Agreement (the "Assignment") (ECF No. 90-3), wherein STORE Capital Acquisitions assigned and transferred to STORE VI all of its right, title and interest in the Purchase and Sale Agreement (ECF No. 90-2).

Also on or about April 16, 2014, HEP-OH and USA Plaza entered into a Purchase and Sale Agreement (ECF No. 60-3) concerning the Property.  Simultaneously, and consistent with ECF No. 90-2, HEP-OH executed a Designation of Transferee Purchase of Property From Third Party, dated April 16, 2014 (ECF No. 60-5).  In ECF No. 60-5, HEP-OH designated STORE VI

(4:20CV1967)

as its designee "for the purpose of taking fee simple title to the Property." ECF No. 60-5 at
PageID #: 1521, ¶ 1.  In addition, HEP-OH directed and instructed USA Plaza "to execute and
deliver to STORE [VI], at the Closing, the Deed required by [ECF No. 90-2], identifying STORE
[VI] as the grantee therein." ECF No. 60-5 at PageID #: 1521, ¶ 2.  Contemporaneously with
executing ECF No. 60-3 and completing the sale-leaseback, HEP-OH directed USA Plaza to
transfer the Property's title to STORE VI.  See ECF No. 60-5 at PageID #: 1521, ¶¶ 1-2.
Accordingly, HEP-OH did not become the Property's title owner and did not transfer the
Property's title to STORE VI.

 To evidence the transfer of the Property's title from USA Plaza to STORE VI as part of
the sale-leaseback, USA Plaza executed a Limited Warranty Deed (ECF No. 90-5)) transferring
the Property's title to STORE VI.  On April 18, 2014, the 2014 Deed was recorded with the
Office of the Recorder for Mahoning County, Ohio.  See ECF No. 90-5 at PageID #: 2364.

 On April 16, 2014, STORE VI and HEP-OH entered into a Lease Agreement (ECF No.
60-6) by which STORE VI leased the Property to HEP-OH.  Also on April 16, 2014, STORE VI
and HEP-OH entered into a Memorandum of Lease (ECF No. 90-7), which was recorded with
the Office of the Recorder for Mahoning County, Ohio on April 18, 2014.  See ECF No. 90-7 at
PageID #: 2425.

 Also in April 2014, USA Parking, as "the Operator," and HEP-OH entered into a
Management Agreement (ECF No. 60-7) by which USA Parking would manage the Parking
Garage for a period of 20 years.  Pursuant to section 9(c)(ii) of the Management Agreement,
Plaintiff expressly agreed and acknowledged that it had no possessory or real estate interest in the

(4:20CV1967)

Parking Garage.  ECF No. 60-7 at PageID #: 1599 ("Operator has no possessory or real estate interest in the Parking Garage.").

EGCC is the lawful owner of the Property and Parking Garage, having purchased them from STORE VI pursuant to an April 2020 Amended and Restated Purchase and Sale Agreement (ECF No. 60-4).  The transactions contemplated by the sale of the Property to EGCC closed on or about June 30, 2020.  *See* Affidavit of Lou Frangos Aff. (ECF No. 23-1) at PageID #: 467, ¶20.  The Parking Garage spans five floors with approximately 1000 spaces.  During its time as owner of the Parking Garage, STORE VI leased the Parking Garage to HEP-OH.  HEP-OH never owned the Property.  *See* ECF No. 60-3 at PageID #: 1458, Section 1.01; Memorandum of Opinion and Order (ECF No. 29) at PageID #: 939.  ECF No. 60-4 did not assign the Management Agreement from STORE VI, as prior owner, to EGCC, or confer any duties or obligations from HEP-OH, as former lessee, to EGCC.

When USA Parking learned that EGCC intended to purchase the Property from STORE VI, to remind HEP-OH, EGCC, and STORE VI of USA Parking's management rights as contemplated in the Purchase and Sale Agreement (ECF No. 60-3) and as set forth in the Management Agreement, USA Parking prepared an Affidavit of Facts Relating to Title (ECF No. 23-5), which was recorded on June 22, 2020.  *See* ECF No. 23-1 at PageID #: 466-67, ¶18.  USA Parking then provided a copy of the Affidavit of Facts to HEP-OH, EGCC, and STORE VI before June 30, 2020.  *See* ECF No. 23-1 at PageID #: 467, ¶19.

**B.**

As stated in the Telephonic Case Management Conference Scheduling Order (ECF No. 72 at PageID #: 1911), the Court requires a party to submit a written request for judgment or to

(4:20CV1967)

be dismissed to opposing counsel before a party may file a dispositive motion. Opposing counsel

shall either agree to the judgment or request for dismissal or shall give explicit reasons in writing

for refusing to do so. Upon such refusal, the party shall reassess its position and may file a

dispositive motion if the party believes it is still entitled to summary judgment or dismissal. The

dispositive motion must be accompanied by a statement certifying that this exchange has

occurred. Only Perik, HEP, and the Trustee submitted the required certifications. *See* ECF No.

87 at PageID #: 2108; ECF No. 92 at PageID #: 2473.

## II. Standards of Review

### A. Motion to Dismiss Under **Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take

all well-pleaded allegations in the complaint as true and construe those allegations in a light most

favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A

cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility

in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not

required to include detailed factual allegations, but must provide more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that merely offers

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]"

devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has

(4:20CV1967)

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it suggests more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

On a motion made under Rule 12(b)(6), the Court's inquiry is generally limited to the content of the complaint, "although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account without converting the motion to one for summary judgment." *Ira Svendsgaard and Assoc., Inc. v. Allfasteners USA, LLC*, No. 1:20CV0328, 2021 WL 4502798, at *3 (N.D. Ohio Oct. 1, 2021) (Nugent, J.) (ECF No. 106-2) (citing *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

**B.     Motion for Judgment on the Pleadings Under Rule 12(c)**

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ. P. 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a

(4:20CV1967)

claim under Fed. R. Civ. P. 12(b)(6). *Daily Services, LLC v. Valentino*, 756 F.3d 893, 898 (6th Cir. 2014) (citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570. The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). Dismissal of the action is proper if Plaintiff "undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Progressive Northern Ins. Co. v. City of Rocky River*, No. 1:18CV0524, 2019 WL 5394206, at *3 (N.D. Ohio Aug. 16, 2019) (internal quotation marks and citations omitted).

## III.    EGCC's Motion to Dismiss (ECF No. 76)

EGCC is a political subdivision of the State of Ohio. EGCC argues that the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Sixteenth Causes of Action do not state a claim against it, and should be dismissed. According to EGCC, Plaintiffs fail to address the legal authority cited by EGCC in favor of dismissal of the First and Second

(4:20CV1967)

Causes of Action (Violations of the Takings Clause of the Fifth Amendment),[1] Sixth Cause of

Action (Unjust Enrichment), Seventh Cause of Action (Conversion), Eighth and Ninth Causes of

Action (Fraudulent Conveyance and/or Conversion), Tenth Cause of Action (Equitable

Enforcement), Eleventh Cause of Action (Estoppel), and Sixteenth Cause of Action (Conversion

of Property Income and/or Unjust Enrichment).

### A.

Political subdivisions in Ohio cannot be sued for intentional torts, such as conversion or

fraudulent conveyance. *Cincinnati v. Harrison*, No. C-130195, 2014 WL 2957946, at *7 (Ohio

App. 1st Dist. June 30, 2014); Ohio Rev. Code § 2744.02 (Ohio's sovereign immunity statute

does not waive immunity for intentional torts). By wholly and completely failing to respond to

EGCC's arguments that Plaintiffs' claims for the intentional torts of conversion and fraudulent

conveyance (the Seventh, Eighth, Ninth, and Sixteenth Causes of Action) are barred under the

doctrine of sovereign immunity, *see* ECF No. 76 at PageID #: 1948-51, Plaintiffs effectively

concede the arguments on those claims, which are now deemed abandoned. *See ARJN #3 v.*

*Cooper*, 517 F. Supp.3d 732, 750 (M.D. Tenn. 2021) (citing *PNC Bank, Nat. Ass'n v. Goyette*

*Mech. Co., Inc.*, 88 F. Supp.3d 775, 785 (E.D. Mich. 2015) (dismissing claims that plaintiffs

failed to respond to in opposition to motion to dismiss, noting that "[a] plaintiff abandons

undefended claims"). "Where a party fails to respond to an argument in a motion to dismiss 'the

Court assumes he concedes this point and abandons the claim.' " *ARJN #3*, 517 F. Supp.2d at

750 (quoting *Mekani v. Homecomings Fin., LLC*, 752 F. Supp.2d 785, 797 (E.D. Mich. 2010));

---

[1] Plaintiffs' alleged constitutional claims against EGCC under the Takings Clause
serve as the purported bases for the Court's federal question subject matter jurisdiction.

(4:20CV1967)

*see also* *Doe v. Bredesen*, 507 F.3d 998, 1007-1008 (6th Cir. 2007) (affirming the district court's conclusion that the plaintiff abandoned certain claims by failing to raise them in his brief opposing the government's motion to dismiss).

**B.**

Next, EGCC argues that Plaintiffs' claims for unjust enrichment (Sixth Cause of Action) and equitable enforcement of the Management Agreement as a restrictive personal covenant (Tenth Cause of Action) fail as a matter of law for three reasons.  First, unjust enrichment is an inappropriate remedy when an express contract governs the issues involved in the action.

*Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2009 WL 723149, at *6 (S.D. Ohio March 16, 2009) (citing *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975)) (dismissing claims of unjust enrichment when an express contract governed). Second, the First Amended Complaint (ECF No. 57) seeks to bind EGCC, a political subdivision, to a 20-year contract, *i.e.*, the Management Agreement (ECF No. 60-7), through equitable principles, which it cannot do under Ohio law.  *Musial Offices, Ltd. v. Cnty. of Cuyahoga*, 163 N.E.3d 84, 94 (Ohio Ct. App. 8th Dist. 2020) (citing *Kraft Constr. Co. v. Cuyahoga Cnty. Bd. of Commrs.*, 128 Ohio App.3d 33, 44 (1998)).  Third, as a governmental entity, EGCC cannot be held liable for unjust enrichment if a claim arises from an express contract, like the Purchase Sale Agreement (ECF No. 60-3) and Management Agreement (ECF No. 60-7) in this case.  *Id.*  Importantly, EGCC is not a party to the Management Agreement.

Plaintiffs' Response (ECF No. 110) offers no rebuttal or authority contrary to these well-established principles.  Plaintiffs appear to believe that they somehow still have a property interest in the Parking Garage.  "Plaintiff is, in essence, asking the Court to ascribe no meaning

(4:20CV1967)

to the plain language of the Management Agreement and ignore the disclaimer altogether, which it cannot do." ECF No. 29) at PageID #: 941 (citation omitted).  The April 2020 Amended and Restated Purchase and Sale Agreement (ECF No. 60-4) did not assign the Management Agreement from STORE VI, as prior owner, to EGCC, or confer any duties or obligations from HEP-OH, as former lessee, to EGCC.  Nothing about EGCC's purchase of the Property created duties for EGCC in favor of Plaintiffs, or otherwise obligated EGCC to continue to allow USA Parking to manage the Parking Garage.  Therefore, these claims are deemed abandoned and the Motion to Dismiss (ECF No. 76) is granted as to the Sixth and Tenth Causes of Action.

### C.

Plaintiffs' Response fails to sufficiently rebut, and in some instances fails to even respond to the legal authority cited by EGCC urging dismissal, including the application of sovereign immunity and other absolute defenses to Plaintiffs'claims.  Instead, Plaintiffs resign themselves to making the type of conclusory statements that are insufficient to survive a properly supported 12(b)(6) motion to dismiss.  For example, Plaintiffs baldly state, without any explanation, citation to the record, or legal authority, "If EGCC is the successor Owner to Store VI, and it (obviously) had notice of the [Management Agreement] when it acquired the Garage from Store VI, it is bound by the [Management Agreement] and is in breach[.]"  ECF No. 110 at PageID #: 2759.[2]

---

[2] Plaintiffs attempt to circumvent the rule that matters outside the pleadings are not to be considered by a court in ruling on a Rule 12(b)(6) motion to dismiss by attaching unauthenticated exhibits to their Response (ECF No. 110) that are not part of the pleadings in the case at bar, including ECF Nos. 110-2 (a letter from a representative of HEP to USA Parking) and 110-3 (five pages of emails between representatives of HEP and USA Parking).  A court is well within its discretion to exclude the extrinsic evidence

(continued...)

(4:20CV1967)

Plaintiffs' Response alleges, without citation to the record, that relief may be granted against EGCC under the First Amended Complaint (ECF No. 57) because ". . . EGCC was fully aware of the 2014 Sale, the Management Agreement, the insolvency of [HEP-OH] and [HEP]; and the payment of about $150,000 in Management Agreement payments needed to maintain adequate access to the garage for its students, staff, and faculty." ECF No. 110 at PageID #: 2753. Nowhere in ECF No. 110, however, do they address the impact of the most important language of the Management Agreement. Pursuant to section 9(c)(ii) of the Management Agreement, USA Parking expressly agreed and acknowledged that it had no possessory or real estate interest in the Parking Garage ("Operator has no possessory or real estate interest in the Parking Garage."). ECF No. 60-7 at PageID #: 1599.

Applying _Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta_, No. 01 CA 60, 2002 WL 924630, at *3, ¶¶ 17-23 (Ohio App. 7th Dist. March 18, 2002), the Court previously ruled that "[USA Parking] cannot satisfy any of the elements of the required three-part test [required to bind personal covenants on successor owners of property]. Therefore, Plaintiff is not able to establish a restrictive covenant in the Parking Garage." ECF No. 29 at PageID #: 942. Plaintiffs attempt to sidestep this ruling by arguing that USA Plaza was not yet a party to the case at bar at the time of the Court's Preliminary Injunction Order. ECF No. 110 at PageID #: 2755.

---

[2](...continued)
and simply consider the motion pursuant to Rule 12(b)(6). _See In re Dow_, 132 B.R. 853, 857 (S.D. Ohio 1991) (court chose to exclude extrinsic evidence and not to convert the motion to one for summary judgment). In fact, the Sixth Circuit states that "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." _Weiner v. Klais & Co._, 108 F.3d 86, 88 (6th Cir. 1997) (_overruled on other grounds by Swierkiewicz v. Sorema, N.A._, 534 U.S. 506 (2002)); _see also In re Flint Water Cases_, 496 F. Supp.3d 1070, 1080 (E.D. Mich. 2020).

(4:20CV1967)

According to EGCC, neither the terms of the Management Agreement, nor the facts as pled relating to it have changed since the original Complaint (ECF No. 1) was filed.  EGCC argues the Court's conclusions in ECF No. 29, after applying the 3-part test in *Lone Star*, are still germane. In addition, EGCC contends under the doctrine of sovereign immunity, claims in equity cannot be asserted against it in any respect.

**D.**

Plaintiffs allege that EGCC has violated their rights under the Takings Clause by:  (1) an alleged unlawful taking of the revenues from the Parking Garage that Plaintiffs' have deemed to be their personal property when EGCC terminated USA Parking's services to manage the Property (First Cause of Action); and (2) an alleged unlawful taking of the Property by EGCC's purchase of it and removal of Plaintiffs from the Property (Second Cause of Action).  EGCC argues that Plaintiffs fail to state a claim upon which relief can be granted under the Takings Clause for two primary reasons:  (1) Plaintiffs do not possess a legally cognizable property interest in the Property, Parking Garage, or ongoing revenues from the Garage; and (2) even if Plaintiffs did possess some property interest in the Property, Parking Garage, or ongoing revenues from the Garage, a claim for a violation of the Takings Clause is inappropriate when Plaintiffs' underlying claim is for breach of contract based upon a Management Agreement to which EGCC is not a party.  In response to EGCC's arguments to dismiss the First and Second Causes of Action (Violations of the Takings Clause), Plaintiffs offer only a one-sentence argument.  Citing no legal authority and without further explanation, Plaintiffs simply make the statement that their takings claims are sufficient merely because USA Parking and USAPlaza's

(4:20CV1967)

claims are "differentiated, Systems for the taking the [Management Agreement] income 'personal property' and Plaza for the taking of its real property." ECF No. 110 at PageID #: 2758.

Plaintiffs' claims under the Takings Clause fail as a matter of law because Plaintiffs are barred from asserting a takings claim for property they do not own and that USA Parking has expressly disclaimed any possessory or real interest in the Parking Garage under section 9(c)(ii) of the Management Agreement.  *See Knick v. Township of Scott*, 139 S. Ct. 2162, 2169-78 (2019) (holding that the Takings Clause is violated when the government takes property without compensation, and a property owner may bring a Fifth Amendment claim under §1983 at that time).  Likewise, a plaintiff is barred from asserting a takings claim for loss of future profits in a business.  *See Andrus v. Allard*, 444 U.S. 51, 65-66 (1979) ("loss of future profits – unaccompanied by any physical property restriction – provides a slender reed upon which to rest a takings claim").

Although Plaintiffs' express disclaimer of any possessory or real estate interest in the Parking Garage is in itself dispositive of the First and Second Causes of Action, Plaintiffs' Takings Clause claims also fail for the additional reason that Plaintiffs' rights and remedies under any contract it freely entered into lie within the contract itself, and the appropriate remedy lies with the other contracting party under the Management Agreement (not EGCC).  Courts have held "[t]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract.  In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim."  *St. Christopher Assoc., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed.Cir. 2008) (quoting *Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Ct.Cl. 1978)).

(4:20CV1967)

**E.**

The Fourth Cause of Action is for a declaratory judgment that EGCC is a successor purchaser to HEP-OH and the STORE Defendants pursuant to the Purchase and Sale Agreement (ECF No. 60-3).  EGCC argues that Plaintiffs claims for declaratory judgment (Fourth and Fifth Causes of Action) fail to state a claim because no express contract exists that binds successors-in-title, like EGCC, to the Management Agreement (ECF No. 60-7), the plain language of the Management Agreement does not bind EGCC to it, and the terms of the Purchase and Sale Agreement establish the existence of consideration.  Plaintiffs allude to the "plain language" of the Management Agreement when arguing that it binds successor owners.  ECF No. 110 at PageID #: 2755.  They cite to the second paragraph of Section 3 in the Management Agreement (ECF No. 60-7 at PageID #: 2653) to support this contention.  *See* Plaintiffs' Response (ECF No. 107) at PageID #: 2653.  The Court has already found, however, that the Management Agreement supports EGCC's argument that it only binds successors-in-interest, not successor owners.  *See* ECF No. 29 at PageID #: 942-43; *see also* ECF No. 60-7 at PageID #: 1596.  Plaintiffs cite to no legal authority or to any part of the record that supports their assertion that successors-in-title are bound by the Management Agreement.

Plaintiffs also argue that they did not receive the "expressly promised consideration" under the Purchase and Sale Agreement.  ECF No. 110 at PageID #: 2749.  According to EGCC, Plaintiffs' claim for declaratory judgment that they are entitled to a rescission of the 2014 sale and restoration of fee title to the Property for lack of material consideration (Fifth Cause of Action) should be dismissed because Section 1.02 of the Purchase and Sale Agreement (ECF No. 60-3 at PageID #: 1458) expressly states that consideration in the amount of $3,000,000.00 was

(4:20CV1967)

paid.  Plaintiffs cite to no legal authority or place in the record that supports their argument that a

breach of contract between Plaintiffs and defaulted Defendant HEP-OH should be imputed upon

EGCC.  The First Amended Complaint (ECF No. 57) and Response (ECF No. 110) also fail to

allege or argue that HEP-OH failed to pay the $3 million.

**F.**

EGCC is a public college that operates the Parking Garage in connection with the college.

Members of the public also use the Parking Garage.  EGCC argues that Plaintiffs' claim for

estoppel (Eleventh Cause of Action) fails as a matter of law under the doctrine of sovereign

immunity because:  (1) EGCC is a political subdivision and its operation of the Parking Garage is

a governmental function; and (2) Plaintiffs fail to allege any representation made by EGCC to

Plaintiffs.  In response, Plaintiffs argue that the Court should deny EGCC's Motion as to the

Eleventh Cause of Action because a question of fact exists as to whether EGCC exercises a

governmental, rather than a proprietary, function when operating the Parking Garage.  ECF No.

110 at PageID #: 2759-60.[3]  Notably, Plaintiffs cite to no legal authority to rebut the legal

authority cited by EGCC, or the arguments in the Motion to Dismiss (ECF No. 76 at PageID #:

1951-52), and otherwise provide no law that would require a political subdivision to maintain a

building used in connection with its governmental function *exclusively* for governmental use.

In *Hortman v. Miamisburg*, 110 Ohio St.3d 194, at syllabus (2006), the Supreme Court

of Ohio held that "[t]he doctrines of equitable estoppel and promissory estoppel are inapplicable

against a political subdivision when the political subdivision is engaged in a governmental

---

[3]  EGCC served its initial disclosures on November 4, 2021.  *See* ECF No. 83.
According to EGCC, Plaintiffs had yet to serve any formal discovery requests upon
EGCC as of January 3, 2022.  *See* ECF No. 114 at PageID #: 2885 n. 2.

(4:20CV1967)

function." Applying the undisputed facts in the case at bar to Ohio Rev. Code § 2744.01(C)(2)(g) establishes that EGCC's operation of the Parking Garage falls within a governmental function. *See Scott v. Dennis*, No. 94685, 2011 WL 94212, at *4 (Ohio App. 8th Dist. Jan. 6, 2011) (citing *Dvorak v. Wright State Univ.*, No. C-3-96-109, 1997 WL 1764779, at *7 (S.D. Ohio Sept. 3, 1997); *see also* Ohio Rev. Code § 2744.01(C)(2)(g) ("the . . . operation of buildings that are used in connection with the performance of a governmental function" qualifies as a governmental function). Moreover, an exercise of governmental function may be used to benefit members of the public. *See generally*, *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 459 (2009) (holding that the operation of public housing constitutes a governmental function for purposes of political subdivision immunity).

Plaintiffs assert in the Eleventh Cause of Action that EGCC is estopped from denying liability under the Management Agreement due to EGCC's alleged payments to USA Parking during the time that HEP-OH leased the Property. ECF No. 49-8 lists a whole series of credit card payments made directly by EGCC to USA Parking under the Management Agreement for about three years prior. *See* ECF No. 49-8; Transcript of Default Hearing (ECF No. 53) at PageID #: 1288-89. Plaintiffs, however, do not, allege that EGCC made any representation or promise to Plaintiffs regarding the Management Agreement or with respect to USA Parking's management of the Parking Garage going forward. Nothing about EGCC's purchase of the Property created duties for EGCC in favor of Plaintiffs, or otherwise obligated EGCC to continue to allow USA Parking to manage the Parking Garage.

(4:20CV1967)

## G.

Rather than attempt to demonstrate that their claims are properly pled, Plaintiffs instead devote considerable time interjecting a misplaced argument that EGCC's Motion is somehow not procedurally proper.  Plaintiffs' request to convert EGCC's 12(b)(6) Motion to a motion for summary judgment is denied because (1) EGCC did not attach to or reference any evidence in its Motion to Dismiss (ECF No. 76) that is not contained within the pleadings, and (2) Plaintiffs' incorporation of extrinsic evidence in their Response (ECF No. 110) does not automatically convert ECF No. 76 into a motion for summary judgment.

Therefore, EGCC's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 76) is granted.

## IV.  Perik and HEP's Motion to Dismiss (ECF No. 87)[4]

In the original Complaint (ECF No. 1), USA Parking sought to recover the fees allegedly due under the Management Agreement (ECF No. 60-7) from HEP-OH.  Now, Plaintiffs seeks to unwind the transactions claiming, *inter alia*, it was fraudulently induced to convey the Property

---

[4]  Perik and HEP did not file a reply memorandum in support of ECF No. 87. Plaintiff's Response (ECF No. 106) was served on December 15, 2022.  LR 7.1(e) provides:

> . . . the moving party may serve and file a reply memorandum in support of any dispositive motion within fourteen (14) days after service of the memorandum in opposition. . . .

Defendant's permissive reply memorandum was, therefore, due on December 29, 2021. Thus, the time for filing a reply has elapsed without a reply brief in support of the motion having been filed.  *See* LR 7.1(g).

In ruling on ECF No. 87, the Court has excluded unauthenticated exhibits attached to ECF No. 106 as matters outside the pleadings; *i.e.*, it has not considered ECF Nos. 106-3 (a letter from a representative of HEP to USA Parking) and 106-4 (nine pages of emails between representatives of HEP and USA Parking).  *See* n. 2, *supra*; Fed. R. Civ. P. 12(d).

(4:20CV1967)

to STORE VI, which ultimately sold the Property to EGCC.  Plaintiffs assert 22 causes of action in the First Amended Complaint (ECF No. 57).  Twenty-one (21) of the claims concern EGCC's acquisition of the Property from STORE VI, which originally acquired the Property from USA Plaza.  According to the First Amended Complaint, HEP-OH was involved in the transactions in only two respects:  First, HEP-OH originally offered to purchase the Property, but USA Plaza consented to the assignment of the Purchase and Sale Agreement (ECF No. 90-2) rights under a sale-leaseback transaction to sell the Property to STORE VI in 2014, which later sold the Property to EGCC in 2020.  Second, HEP-OH was a party to the Management Agreement with USA Parking.  There is no allegation or description of Perik's or HEP's involvement with the sale of the Property by USA Plaza to STORE VI.  Only the Twenty-Second Cause of Action is asserted against Perik, HEP-OH, and HEP.  *See* ECF No. 57 at PageID #: 1344, ¶ 161 (alleging that Perik and HEP are the alter-egos of HEP-OH and, as such, are jointly and severally liable for any and all judgments against HEP-OH).  The First Amended Complaint (ECF No. 57) at Paragraphs 10-13 identifies and describes the relationship of Perik and HEP to HEP-OH.  With respect to the alter-ego claim, neither the control of HEP-OH nor the relationship between HEP-OH, HEP and Perik actually caused or contributed to the alleged harm described in the first twenty-one causes of action.

Plaintiffs suggest in their Response that the Court refrain from immediately ruling on ECF No. 87 because it is premature under Fed. R. Civ. P. 12(d) and 56 because no discovery has been undertaken.[5]  *See* ECF No. 106 at PageID #: 2583; 2591.  Plaintiffs also argue that the

---

[5]  Fed. R. Civ. P. 26(d)(2)(A) allows parties to "deliver" requests for Rule 34 productions at least 21 days after the service of the summons and complaint on a party.

(continued...)

(4:20CV1967)

Motion to Dismiss fails under Rules 12(d) and 56(f).  *See* ECF No. 106 at PageID #: 2585; 2591.

Plaintiffs contend that ECF No. 87 is "a de facto summary judgment submission[ ] to be treated

as such under [Fed. R. Civ. P. 56]," and that "Rule 56 permits [Plaintiffs] the opportunity to

conduct appropriate and reasonable discovery"  ECF No. 106 at PageID #: 2585.  But, none of

the information relied on in the Motion to Dismiss (ECF No. 87) involves matters outside of the

pleadings.

### A.

In June 2021, the Court held an evidentiary hearing regarding the amount of damages and

entered a Default Judgment (ECF No. 51) in favor of USA Parking against HEP-OH in the

amount of $5,380,470.64.  The amount of the judgment is the discounted present value of the

Management Agreement payments for the remaining years of its term.  Plaintiffs now allege in

conclusory fashion that HEP-OH is the alter-ego of HEP and/or Perik; therefore, the corporate

disregard theory applies.  *See e.g.*, First Amended Complaint (ECF No. 57) at PageID #: 1313, ¶¶

10, 11, and 13.  However, legal distinctions between HEP-OH, the limited liability company, and

its owner(s) may be "disregarded" to hold the owner(s) "liable for corporate misdeeds," only

under limited circumstances.  *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67

Ohio St.3d 274, 289 (1993).  According to Perik and HEP, ECF No. 57 contains no facts alleging

that Defendants' "control over the corporation . . . was so complete that the corporation has no

separate mind, will, or existence of its own, [that] control over the corporation by those to be

---

[5](...continued)
*See* Telephonic Case Management Conference Scheduling Order (ECF No. 72) at PageID
#: 1910.  The request is not considered served until the first Rule 26(f) planning
conference, which was held on October 25, 2021.  *See* Discovery Plan (ECF No. 91) at
PageID #: 2467.

(4:20CV1967)

held liable was exercised in such a manner as to commit fraud or an illegal act against the person

seeking to disregard the corporate entity, and [that] injury or unjust loss resulted to the plaintiff

from such control and wrong." *Id.*  As noted by the Sixth Circuit in *Taylor Steel, Inc. v. Keeton*,

the first element of the *Belvedere* test "is a restatement of the alter-ego doctrine, which requires

that plaintiff 'show that the individual and the corporation are fundamentally indistinguishable.' "

417 F.3d 598, 605 (6th Cir. 2005) (quoting *Belvedere*, 67 Ohio St. 3d at 288).

> Factors to consider in evaluating this "alter-ego doctrine" are as follows:
>
> (1) inadequate capitalization; (2) insolvency at the time of the disputed act; (3) the individual held himself out as personally liable for certain corporate obligations; (4) siphoning of funds or assets of the entity for personal expenditures or use; (5) the entity's inability to pay debts due to high salaries or loans to shareholders; ([6]) commingling of individual and entity funds; ([7]) disregard of corporate roles; ([8]) disregard of corporate formalities; ([9]) lack of corporate records, especially regarding claimed loans to or from the entity to be pierced; ([10]) common office space; ([11]) personnel; and ([12]) the degree of domination by the person to be held liable, e.g. where the corporation was a mere facade for the operations of the dominant shareholders.

*Premier Therapy, LLC v. Childs*, 75 N.E.3d 692, 716 (2016) (citations omitted) *see also*

*Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-705 (6th

Cir. 1988) (Factors to be considered in piercing the corporate veil "include undercapitalization of

the corporation, the maintenance of separate books, the separation of corporate and individual

finances, the use of the corporation to support fraud or illegality, the honoring of corporate

formalities, and whether the corporation is merely a sham.") (citation omitted).  Perik and HEP

argue Plaintiffs merely allege, without specifying why or how, that HEP-OH is somehow the

alter-ego of HEP and/or Perik.  According to Perik and HEP, there is no allegation whatsoever

describing or providing any factual basis as to how or why HEP (the disclosed agent of HEP-OH)

(4:20CV1967)

and Perik (the disclosed agent of HEP) fraudulently induced USA Plaza to sell the Property to

STORE VI.  Perik and HEP point out that (1) Plaintiffs asked for the Management Agreement to

be signed by HEP-OH, to which it obliged, and (2) Plaintiffs, with the assistance of counsel,

assented to the assignment of the right to purchase the Property to Store Funding.

**B.**

Next, Perik and HEP contend there is no privity between Plaintiffs and either Perik or

HEP.  *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 778 (2003) ("a contract is binding

only upon parties to a contract and those in privity with them") (citation omitted).  According to

Perik and HEP, the exhibits attached to the First Amended Complaint (ECF No. 57) demonstrate

that HEP-OH (not Perik nor HEP) was the party with whom Plaintiffs had entered into a contract.

The relevant contracts and documents identify HEP-OH as the party with whom Plaintiffs

contracted are the Collaboration Agreement between HEP-OH and EGCC (ECF No. 60-1);

Memorandum of Lease (ECF No. 60-2); Designation of Transferee Purchase of Property From

Third Party (ECF No. 60-5); and Management Agreement between HEP-OH and USA Parking

(ECF No. 60-7).  None of these agreements or documents name HEP or Perik as a party; and

neither HEP nor Perik, in his individual capacity, guaranteed an obligation or liability of

HEP-OH owed to Plaintiffs.

HEP and Perik maintain they cannot be held personally liable for the debts or obligations

of HEP-OH.  The Management Agreement (ECF No. 60-7) was required by the Purchase and

Sale Agreement (ECF No. 60-3) originally executed by USA Plaza and HEP-OH.  The

Management Agreement identified HEP-OH as the entity responsible for performing all

obligations.  In all cases, HEP is the disclosed agent of HEP-OH, and Perik is the disclosed agent

(4:20CV1967)

of HEP. As such, HEP and Perik argue that neither of them is liable for the debts or obligations of HEP-OH. *James G. Smith & Assoc., Inc. v. Evertt*, 1 Ohio App.3d 118, 120 (1981 ) ("An agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes.") (citations omitted).

ECF Nos. 49-6, 49-7, and 49-8[6] list the monthly payments that USA Parking received from July 2014 through August 1, 2020 from HEP, Perik, and EGCC, respectively. Most of the payments are consistent with the fees due under the Management Agreement. Perik and HEP argue that "[t]he payment or non-payment of any monies allegedly required under the Management [Agreement] was not caused or related to the control of HEP-OH or [the] relationship between HEP-OH, HEP, and/or Perik." ECF No. 87 at PageID #: 2115. According to Plaintiffs, however, ECF Nos. 49-6, 49-7, and 49-8 demonstrate the sources of the payments "from the so-called [HEP-OH] side" under the Management Agreement. ECF No. 53 at PageID #: 1270. Thousands of dollars in payments by wire transfer, as well as a check, were received from HEP, which is alleged to be the parent of HEP-OH. *See* ECF No. 49-6; ECF No. 57 at PageID #: 1317, ¶ 32. There was also a check from a personal bank account for one payment written by Perik, whom is alleged to be the owner of HEP. *See* ECF No. 49-7 at PageID #: 2631; ECF No. 57 at PageID #: 1313, ¶ 12.

At this stage, the factual allegations in the First Amended Complaint (ECF No. 57) and consideration of ECF Nos. 49-6 and 49-7 are sufficient to state a claim of alter-ego liability

---

[6] ECF No. 60 at PageID #: 1366 provides "Index Exhibit 10: Summary of Payments and (partial) Payment Records; Management Agreement Payments by EGCC to USA Parking Systems LLC." Exhibit 10 is included as PageID #: 1859-74 of ECF No. 60-9. Copies of ECF Nos. 49-6 and 49-8 are included in ECF No. 60-9 at PageID #: 1861-74. ECF No. 106-5 is a copy of ECF Nos. 49-6 and 49-7.

(4:20CV1967)

against Perik and HEP.  *See Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 112 (6th Cir. 1989) (affirming district court finding of alter-ego liability after trial when officers of the corporations were exactly the same and one corporation had acquired the others' assets); *Ickes v. Nexcare Health Sys., L.L.C.*, 178 F. Supp.3d 578, 593 (E.D. Mich. 2016) (finding common ownership and mailing addresses sufficient to allege alter-ego liability at summary judgment stage); *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 450 F. Supp.2d 757, 761 (E.D. Mich. 2006) (allegations of a controlling parent-subsidiary relationship enough to move past motion to dismiss stage).

Therefore, Perik and HEP's Motion to Dismiss the First Amended Complaint (ECF No. 87) is denied.

**V.     The STORE Defendants' Motion to Dismiss ((ECF No. 90)**

The STORE Defendants argue that the Third, Fifth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, and Twenty-first Causes of Action do not state a claim against them, and should be dismissed.

USA Plaza asserts that it did not receive the expressly promised consideration for the 2014 sale of the Property to STORE VI.  Plaintiffs allege that the STORE Defendants are successors in interest and title to USA Plaza as the sequential successor to the purchaser (HEP-OH) in the 2014 Purchase and Sale Agreement (ECF No. 60-3) and are entitled to damages and/or rescission of the sale.

(4:20CV1967)

**A.     Plaintiffs' Claims to Enforce the Management Agreement (ECF No. 60-7) Fail.**

The claims against the STORE Defendants for equitable enforcement of the Management Agreement (Nineteenth Cause of Action), declaratory judgment (Third Cause of Action), and estoppel and promissory estoppel (Seventeenth Cause of Action) fail.  Plaintiffs improperly seek to cause the Management Agreement to be both an express and implied contract covering the same subject matter.  *DuBrul v. Citrosuco N. Am., Inc.*, 892 F. Supp.2d 892, 914 (S.D. Ohio 2012).  They fail to allege the basic elements for the existence of a contract, much less a breach of the contract.  Plaintiffs fail to allege the elements of estoppel.  *Carbone v. Nueva Constr. Grp., L.L.C.*, 83 N.E.3d 375, 380 (Ohio Ct. App. 8th Dist. 2017); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 665 F. Supp.2d 899, 915 (S.D. Ohio 2009).  Finally, they do not present a justiciable controversy.  28 U.S.C. § 2201; *City of Parma, Ohio v. Cingular Wireless, LLC*, 278 Fed.Appx. 636, 641 (6th Cir. 2008).

Plaintiffs center their Response (ECF No. 107) on statements that rehash and reformulate the conclusory allegations on which the First Amended Complaint (ECF No. 57) is based.  For instance, Plaintiffs argue without any factual or legal support whatsoever that:  (1) the STORE Defendants were parties to the Management Agreement (ECF No. 107 at PageID #: 2653); (2) the Management Agreement's terms somehow cause non-parties to be bound by it (ECF No. 107 at PageID #: 2653-60); (3) ECF No. 29 is now improper or erroneous (ECF No. 107 at PageID #: 2653-60); (4) the STORE Defendants somewhere, somehow "promised" to be bound by the Management Agreement (ECF No. 107 at PageID #: 2653-60); and (5) if the STORE Defendants

(4:20CV1967)

are not parties to the Management Agreement, then all of the transactions regarding the Property

should be unwound (ECF No. 107 at PageID #: 2653-60).

Pursuant to Fed. R. Civ. P., 12(b)(6), courts should dismiss claims that fail to allege

"enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

And dismissal is proper "when there is no set of facts that would allow the plaintiff to recover."

*Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993). Here, as ECF No. 107 highlights,

Plaintiffs fail to present any facts that would allow them to recover against the STORE

Defendants. Thus, their claims to enforce the Management Agreement against the STORE

Defendants (Nineteenth, Third, and Seventeenth Causes of Action) are dismissed.

### B.   Plaintiffs' Claims to Rescind the Subject Property Transactions Fail.

These are Plaintiffs' claims for declaratory judgment (Fifth Cause of Action), fraudulent

conveyance and restoration of fee title (Twelfth Cause of Action), fraudulent inducement

(Thirteenth Cause of Action), and restoration of fee title because of failure of consideration

(Eighteenth Cause of Action). According to the STORE Defendants, these claims fail because,

*inter alia*, they are erroneously predicated on the Management Agreement's enforceability

against the STORE Defendants, they have no factual support proving that the Management

Agreement runs with the land, and they make plain that Plaintiffs cannot establish the necessary

elements for fraudulent conveyance and fraudulent transfer.

In their Response, Plaintiffs oppose the dismissal of these claims by circling back to, and

relying entirely upon, the conclusory allegations in the First Amended Complaint (ECF No. 57).

*See* ECF No. 107 at PageID #: 2660. Plaintiffs argue that their fraudulent conveyance and

inducement claims should survive dismissal because they conclude, without any legal or factual

(4:20CV1967)

support, that the subject Property transactions lacked consideration.  *See* ECF No. 107 at PageID #: 2660.  They also believe that these claims should pass scrutiny for the entirely unsupported reason that the transfers of the subject Property's title were "unlawful."  ECF No. 107 at PageID #: 2660.

Plaintiffs come nowhere close to meeting the heightened pleading requirements of particularity and clear and convincing evidence that apply to their claims for fraudulent conveyance and fraudulent inducement.  Fed. R. Civ. P. 9(b); Ohio Rev. Code § 1336.04 (providing the elements of a fraudulent transfer claim); *Biskind v. American Exp. Co.*, No. 1:14CV0460, 2014 WL 4441367, at *7 (N.D. Ohio Sept. 9, 2014) (dismissing a fraudulent inducement claim because it was not alleged with the particularity required by Rule 9(b)).

### C.      Plaintiffs' Remaining Claims Against The STORE Defendants Fail.

Plaintiffs argue the STORE Defendants were unjustly enriched as owners by receiving about $2.5 million in rent from HEP-OH and about $5 million in profit from the sale of the Parking Garage to EGCC.  They also contend there are no legal or functional distinctions between STORE Capital Acquisitions and STORE Capital Corporation on the one hand, and STORE VI on the other.  According to Plaintiffs, STORE VI and STORE Capital Acquisitions are alter-egos of STORE Capital Corporation.  The STORE Defendants argue that Plaintiffs' remaining claims against them for unjust enrichment and conversion (Fourteenth, Fifteenth, and Sixteentth Causes of Action) and for an alter-ego declaration (the Twenty-first Cause of Action) fail as well.  Plaintiffs seek to side-step dismissal by reshaping and regurgitating the conclusory allegations in the First Amended Complaint (ECF No. 57).  *See* ECF No. 107 at PageID #: 2660. They cite the Corporate Disclosure Statement of STORE VI (ECF No. 21) and argue that the

(4:20CV1967)

STORE Defendants are alter-egos of one another.  Plaintiffs support this argument by erroneously alleging that it is "admitted."  ECF No. 106 at PageID #: 2582; ECF No. 107 at PageID #: 2649; 2660.

Under Ohio Rev. Code § 1705.48(B) "[n]o member, manager, or officer of a limited liability company is personally liable to satisfy any judgment, decree, or order of a court for, or is personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member, manager, or officer of the limited liability company." Limited liability companies, like corporations, however, are subject to the veil-piercing doctrine. *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, No. 2:17-cv-783, 2019 WL 5962684, at *4 (S.D. Ohio Nov. 13, 2019) (citation omitted).  "[A] member of a limited liability company may be held personally liable if the plaintiff demonstrates that the behavior of the members merits disregarding, or piercing, the entity's limited liability structure." *Denny v. Breawick, LLC*, 137 N.E.3d 578, 584 (Ohio Ct. App. 3d Dist. May 28, 2019) (internal quotation marks and citation omitted).  In addition, Plaintiffs contend that the Management Agreement is enforceable against non-parties and that the transactions for the subject Property lacked consideration.  Yet again, they support these contentions only through conclusory and erroneous statements.  *See* ECF No. 107 at PageID #: 2653 ("The inconvenient truths are that [STORE VI] was a party to the 2014 Sale and the Management Agreement."); 2660.

(4:20CV1967)

> **D.  The Court Denies Plaintiffs' Request to Convert the Motion to Dismiss Into One Seeking Summary Judgment.**

At various points in their Response, Plaintiffs suggest that the Court refrain from immediately ruling on ECF No. 90 because it should be converted to one seeking summary judgment.  *See* ECF No. 107 at PageID #: 2650, 2652-53, and 2661.  None of the information properly relied on in the briefing of the Motion to Dismiss involves matters outside of the pleadings.[7]  Thus, ECF No. 90 does not require conversion to a motion seeking summary judgment.

Therefore, the STORE Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 90) is granted.

## VI.  The Trustee's Motion for Judgment on the Pleadings (ECF No. 92)

In 2020, EGCC issued General Receipts Improvement Bonds, Series 2020 (the "Bonds") for the purpose of "the acquisition, construction, renovation and equipping" of certain "facilities."  In connection with issuing the Bonds, EGCC entered into a Trust Agreement with The Huntington National Bank, as Trustee, dated as of June 1, 2020 ("Original Trust Agreement"), as supplemented by the First Supplemental Trust Agreement dated as of June 1, 2020 ("First Supplemental," and together with the Original Trust Agreement, "Trust Agreement" (ECF No. 88-1)).  EGCC's obligations to the Bondholders are secured by a lien on its "General Receipts," but the Trustee does not have a lien on specific facilities or assets like the Property or revenue from the Property.  *See* ECF No. 88-1 at PageID #: 2151, Section 2.04; PageID #: 2213.

---

[7]  Plaintiffs also attach unauthenticated exhibits to ECF No. 107 that are not part of the pleadings in the case at bar, including ECF Nos. 107-2 (a letter from a representative of HEP to USA Parking) and 107-3 (five pages of emails between representatives of HEP and USA Parking).  *See* n. 2, *supra*.

(4:20CV1967)

Per the Trust Agreement, EGCC must make monthly payments to the Trustee from its General

Receipts to cover payments due to the Bondholders.  *See* ECF No. 88-1 at PageID #: 2168,

Section 5.01(e)(ii); PageID #: 2221, Section 8(a)-(b).  EGCC's payments are not required to

come from any particular source (other than its General Receipts), such as income from the

Property, as Plaintiffs incorrectly allege.  *See* ECF No. 57 at PageID #: 1326, ¶ 72.

The Trustee is the representative of the Bondholders.  It "has been joined because it

represents an interest in the proceedings as well as the [Parking] Garage itself and its revenue, as

Trustee for the bondholders of a bond issued by EGCC to *secure funds* to acquire,

remodel/update, and operate the Garage."  ECF No. 106 at PageID #: 2582-83; ECF No. 107 at

PageID #: 2650 (emphasis in original).  Instead of addressing the arguments the Trustee raised in

the Motion (ECF No. 92), Plaintiffs resort to repeating irrelevant arguments cut and pasted from

their Responses to the other Defendants' motions to dismiss.

**A.      Plaintiffs Concede That Their Claim Against The Trustee is Contingent on
Future Events That May Not Occur.**

Consistent with the allegations in the First Amended Complaint (ECF No. 57), Plaintiffs

do not claim that there is a *currently existing* justiciable controversy as required to support their

declaratory judgment claim against the Trustee (Twentieth Cause of Action).  The controversy

"must be such that it can presently be litigated and decided and not hypothetical, conjectural,

conditional or based upon the possibility of a factual situation that may never develop."  *Hillard*

*v. First Fin. Ins.*, No. 91-6238, 1992 WL 164998, at *2 (6th Cir. July 16, 1992) (quoting *Rowan*

*Co., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir.1989)).  Plaintiffs have attempted to allege a

connection between the Bonds and the Management Agreement (ECF No. 60-7) that forms the

(4:20CV1967)

basis for their claims against the other Defendants to keep the Trustee in the case at bar.

Contrary to the allegations in ECF No. 57, Plaintiffs now argue that the original issuance of the

Bonds, as well as EGCC's ability to meet its Bond payment obligations, were and are dependent

on the vitiation and abrogation of the Management Agreement.  Plaintiffs argue that, if the

Management Agreement is ultimately enforced against EGCC and the revenue from the

Management Agreement reverts to Plaintiffs, EGCC "may" default on its Bond payment

obligations, which will result in "competing interests" in the Parking Garage between the Trustee

and Plaintiffs.  Plaintiffs' Response (ECF No. 111) at PageID #: 2850-51.  Plaintiffs' new

allegations in ECF No. 111 ignore that they *never alleged* in the First Amended Complaint (ECF

No. 57) that the Management Agreement played this critical role with respect to the issuance of

the Bonds.  The Court cannot consider these allegations as informing the Motion for Judgment

on the Pleadings.  *See United States v. Medquest Assocs., Inc.*, 702 F. Supp.2d 909, 918 n. 2

(M.D. Tenn. 2010) (" 'It is axiomatic that the complaint may not be amended by the briefs in

opposition to a motion to dismiss.' ") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d

1101, 1007 (7th Cir.1984)).

In addition, Plaintiffs assert that certain " 'third party'obligations" referenced in

Bond-related documents (cited in ECF No. 57 at PageID #: 1326, ¶ 72) relate to the Management

Agreement (ECF No. 60-7) specifically.  This attempt to link the Management Agreement to

their original allegations is not supported by the documents.  Likewise, Plaintiffs' incorrectly

argue that the Court has already found that, in order to effectuate the Bond issuance, EGCC

somehow vitiated or abrogated the Management Agreement.  ECF No. 111 at PageID #: 2850.

The documents and Order (ECF No. 29) Plaintiffs cite (ECF No. 111 at PageID #: 2851) do not

(4:20CV1967)

support any connection between the Management Agreement and the Bond issuance, or even

EGCC's Bond payment obligations.  And, even if the Management Agreement revenue were to

revert to Plaintiffs, that fact alone would not necessarily result in an Event of Default under the

Trust Agreement, *see* ECF No. 88-1 at PageID #: 2184, Section 7.01, so as to create a conflict

between Plaintiffs and the Trustee.

   Plaintiffs' claim is not ripe because they concede that their claim against the Trustee is

contingent on future events that may not occur.  *See* ECF No. 111 at PageID #: 2844; 2851;

2851-52.  The future events include Plaintiffs' success on their claims against other Defendants

resulting in Plaintiffs' entitlement to the Property and its income.  "A claim is not ripe for

adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all."  *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 475 F. Supp.3d 770, 778 (S.D.

Ohio 2020), *aff'd*, 18 F.4th 509 (6th Cir. 2021) (quoting *Texas v. United States*, 523 U.S. 296,

300 (1998)).

   Plaintiffs' declaratory judgment claim (Twentieth Cause of Action) cannot survive absent

a presently existing justiciable controversy.  One that is "contingent on the happening of

hypothetical future events" and may never materialize is simply insufficient.  *Cummin v. North*,

No. 2:15-CV-1043, 2017 WL 4386809, at *8 (S.D. Ohio Sept. 29, 2017), *aff'd*, 731 Fed.Appx.

465 (6th Cir. 2018).  Plaintiffs cannot and have not alleged such a controversy, and therefore

(4:20CV1967)

their declaratory judgment claim fails and is dismissed.  *See Toledo Newspaper Unions - Blade Pension Tr. Fund v. Fed. Ins. Co.*, No. 3:07CV2590, 2008 WL 11433474, at \*2 (N.D. Ohio Feb. 28, 2008), *aff'd sub nom. Toledo Newspaper Unions-Blade Pension Tr. Fund v. Fed. Ins. Co.*, 318 Fed.Appx. 347 (6th Cir. 2009) (dismissing declaratory judgment action where no actual case or controversy was presented).

> **B.      The Documents and Order That Plaintiffs Cite Do Not Support Their Attempt to Tie the Management Agreement to Either the Bond Issuance or the Debt Service.**

Plaintiffs assert that the issuance of the Bonds, and EGCC's payment of its Bond obligations, were and are dependent on the abrogation of the Management Agreement.  To support this argument, which as stated above is not reflected in the allegations of the First Amended Complaint (ECF No. 57), Plaintiffs rely on documents related to the Bond issuance and an Order of the Court (ECF No. 29), even though those documents do not support their arguments.

> **1.      The Fee Pledge Request (ECF No. 60-8 at PageID #: 1619-21) That Plaintiffs Rely on Does Not Support Their Claim for Declaratory Judgment.**

According to the Trustee, stating that ownership of unidentified properties would "generate substantial cash flow savings" (ECF No. 60-8 at PageID #: 1619) is not the same as stating that the Bond payments were "dependent upon" such ownership.  Moreover, Plaintiffs fail to allege that the "third-party contractual obligations" referenced in the Fee Pledge Request included any obligations EGCC might have had with respect to the Management Agreement (ECF No. 60-7), and cannot do so because EGCC was never a party to the Management Agreement.  Indeed, the Court previously found that neither horizontal nor vertical privity exist

(4:20CV1967)

between USA Parking and EGCC, such that the Management Agreement would bind EGCC.
*See* ECF No. 29 at PageID #: 943.

> **2.     The Order (ECF No. 29) That Plaintiffs Rely on Does Not Support Their Claim for Declaratory Judgment.**

Plaintiffs assert in the Response (ECF No. 111) (again, this is not in ECF No. 57) that the Court previously found that, to effectuate the Bond issuance, EGCC somehow abrogated or vitiated the Management Agreement (ECF No. 60-7), which Plaintiffs argue is evidenced by EGCC's acquisition of the Property from Bond funds.  *See* ECF No. 111 at PageID #: 2850 ("This Court has already determined that the MA was in some manner vitiated or abrogated by EGCC; and as the only source of 'funds' to acquire the Garage by EGCC from Store was the Bond proceeds, . . . .").  What the Court previously stated is:  "Second, the Management Agreement (ECF No. [60-7]) does not make the property more valuable or useful.  Rather it is presently a burden on the Property because it prevents EGCC from securing funds to effectuate necessary structural repairs to the Parking Garage, and is otherwise cost prohibitive."  ECF No. 29 at PageID #: 943.  Plaintiffs do not, however, explain how this statement could be interpreted to mean that "this Court *found* . . . that the ending of the MA was critical for the Bond issue." ECF No. 111 at PageID #: 2850 (emphasis in original).  According to the Trustee, EGCC never would have needed to "end" the Management Agreement in order for the Bonds to be issued; indeed, the Bonds had already been issued when ECF No. 29 was entered on November 23, 2020.  *See* ECF No. 115 at PageID #: 2903-2904.  Thus, Plaintiffs fail in their attempt to tie the Management Agreement to EGCC, and thereby to the Bonds.

(4:20CV1967)

**C.** **Plaintiffs Cannot Rely on the Mere Possibility That Reversion of Management Agreement Revenue to Plaintiffs Might Create an "Event Of Default" Under the Trust Agreement to Support Their Declaratory Judgment Claim.**

EGCC makes its payments to the Trustee from its General Receipts, which includes income from various sources – including tuition, activity fees, grants, gifts, and donations – not just income or revenue from the Parking Garage.  Even if "Garage revenue" and/or fee title in the Property were to revert to Plaintiffs and the revenue was no longer part of EGCC's General Receipts, that alone would not necessarily result in an Event of Default under the Trust Agreement as long as EGCC continued to make payments to the Trustee from other sources constituting its General Receipts.  Therefore, Plaintiffs' argument that the enforcement of the Management Agreement against EGCC would result in an Event of Default is entirely speculative – no "present" controversy exists between the Trustee and Plaintiffs.  *Cummin*, 2017 WL 4386809, at *8 ("For a justiciable question to exist, [t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events . . . and the threat to his position must be actual and genuine and not merely possible or remote." (internal quotation marks, brackets, and citations omitted).

**D.** **Plaintiffs' Arguments Related to the Conversion of the Motion to a Rule 12(d) or Rule 56 Motion Requiring Discovery Apply an Incorrect Standard.**

Plaintiffs contend that ECF No. 92 is "a de facto summary judgment submission[ ] to be treated as such under [Fed. R. Civ. P. 56]," and that "Rule 56 permits [Plaintiffs] the opportunity to conduct appropriate and reasonable discovery" (ECF No. 111 at PageID #: 2849), but the

(4:20CV1967)

Motion is premature because "no discovery [has] been undertaken." (ECF No. 111 at PageID #: 2847).  But, the Case Management Conference was held on November 15, 2021.  Thereafter, the Court entered an Order that provides:  "the Court concludes that only written discovery, including, but not limited to, requests for production under Fed. R. Civ. P. 34, shall proceed while ECF Nos. 76, 87, 90, and 92 are pending."  ECF No. 100 at PageID #: 2535 (footnote omitted).  Discovery is not only unnecessary for a Rule 12(c) motion, it is inappropriate.  *See Marsilio v. Vigluicci*, 924 F. Supp.2d 837, 847 (N.D. Ohio 2013) ("the purpose of a motion under Rule 12(c) is to test the sufficiency of the complaint, without requiring the parties to engage in expensive and time-consuming discovery"); *see also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (holding that the district court did not commit reversible error in failing to convert defendants' motion for judgment on the pleadings into a motion for summary judgment and stating "it is black-letter law that, with a few irrelevant exceptions, a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings.").

Plaintiffs' declaratory judgment claim against the Trustee (Twentieth Cause of Action) is dismissed under Rule 12(c) because Plaintiffs fail to plead facts sufficient to make the claim plausible on its face.

Therefore, the Trustee's Motion for Judgment on the Pleadings (ECF No. 92) is granted.

(4:20CV1967)

## VII.  Conclusion

For the foregoing reasons,

Defendant Eastern Gateway Community College's Motion to Dismiss Plaintiffs'

Amended Complaint (ECF No. 76) is granted.

Defendants Michael Perik and Higher Education Partners LLC's Motion to Dismiss the

First Amended Complaint (ECF No. 87) is denied.

The STORE Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 90) is granted.

Defendant The Huntington National Bank, as Trustee for Bondholders, EGCC District

General Receipts Improvement Bonds, Series 2020's Motion for Judgment on the Pleadings

(ECF No. 92) is granted.


IT IS SO ORDERED.


   February 1, 2022             /s/ Benita Y. Pearson
Date                          Benita Y. Pearson
                              United States District Judge